UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

NATURAL RESOURCES DEFENSE COUNCIL, INC.,

Plaintiff,

- v. -

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,

Defendant.

Civ. No. _____

------------------------------------------------------------x

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### INTRODUCTORY STATEMENT

1. The Natural Resources Defense Council, Inc. ("NRDC") brings this Freedom of Information Act ("FOIA") suit to compel the United States Environmental Protection Agency ("EPA") to release records of its latest assessment of trichloroethylene ("TCE") and other contamination from the Dickson Landfill ("Landfill") in Dickson County, Tennessee. Release of these records will further public awareness of and efforts to redress serious threats to human health and the environment that have gone unabated, and potentially intensified, in the four years since EPA concluded its review.

2. TCE is an industrial chemical and solvent that is highly toxic and potentially lethal to humans. TCE exposure has been linked to nervous system impairment, liver and lung damage; abnormal heartbeat; low birth weight, congenital heart defects, orofacial defects, and other developmental harms; and comas. TCE is also a likely human carcinogen.

1

3. For decades, hazardous and solid wastes, including industrial wastes containing TCE, were dumped on open ground at the Landfill. Contamination from these wastes has seeped into the soil and groundwater, rendering private drinking wells and springs as far as two to three miles away unfit for human consumption, threatening a river that provides public water supplies for thousands of area residents, and forcing local government officials to declare an "environmental risk area" in neighborhoods bordering the Landfill.

4. In March 2004, EPA concluded a several-year site assessment at the Landfill and published a report entitled the *Dickson County Landfill Reassessment Report* (Revision 4) (hereinafter "*Report*"). In November 2007, NRDC filed a FOIA request seeking EPA records relating to the preparation of the *Report*. EPA has provided an incomplete and inadequate response to NRDC's request, and has failed to decide NRDC's administrative appeal of that response by the statutory deadline.

5. EPA has violated FOIA by failing to search for, identify, and release all records responsive to NRDC's FOIA request. To redress this violation, and to further public understanding of EPA's activities as they relate to the Dickson Landfill's threats to human health and the environment, this Court should order the records released within twenty days.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action and venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) because NRDC resides in and maintains its principal place of business in this district. This Court may award NRDC all necessary injunctive relief pursuant to FOIA, 5 U.S.C. § 552(a)(4)(B), and may award declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202.

//

## PARTIES

7. Plaintiff NRDC is a national, not-for-profit membership corporation with its principal place of business in New York, New York. Founded in 1970, NRDC represents more than 420,000 members nationwide. NRDC's membership and staff of lawyers, scientists, and other environmental specialists have a longstanding interest in regulation of toxic chemicals and public health issues, and have been involved for decades in advocacy regarding the adverse public health and environmental impacts of toxic chemicals.

8. NRDC routinely uses FOIA to obtain information from federal agencies that NRDC's scientific and other experts analyze in order to inform its members and the public about a variety of issues, including drinking water contamination, endangered species protection, energy policy, water and air pollution, pesticide regulation, climate change, and nuclear weapons. NRDC has a long history of incorporating information obtained through FOIA into reports, articles and other communications to its members and the general public.

9. NRDC brings this action on its own behalf and on behalf of its members. NRDC and its members have been and continue to be injured by EPA's failure to provide responsive records. The relief NRDC requests here will redress these injuries.

10. Defendant EPA is an "agency" within the meaning of FOIA and has possession or control of records that NRDC seeks in this action.

## STATUTORY FRAMEWORK

11. FOIA requires EPA and other agencies of the federal government, upon request, to release records to the public except when a specific statutory exemption applies. 5 U.S.C. §§ 552(a)(3)(A); 552(b). FOIA's exemptions are narrowly construed. EPA bears the burden of establishing the applicability of an exemption as to each document for which it is claimed.

12. Upon receiving a FOIA request, EPA has twenty working days to determine whether responsive documents exist. *Id.* § 552(a)(6)(A)(i). EPA must then "immediately notify" the requestor of its determination on the request and the reasons for that determination. *Id.*

13. In seeking to withhold records or parts thereof under a FOIA statutory exemption, EPA must describe, with reasonable specificity, the nature of the records withheld and the agency's justification for their nondisclosure. EPA must also identify, and promptly release, any non-exempt and "reasonably segregable" material. *Id.* § 552(b); *see also* § 552(a)(3)(A).

14. When EPA denies a FOIA request, whether in whole or in part, EPA must "make a reasonable effort to estimate the volume of any requested matter the provision of which is denied, and shall provide any such estimate to the person making the request" unless this "would harm an interest protected by" the FOIA exemption "pursuant to which the denial is made." *Id.* § 552(a)(6)(F); *see also* 40 C.F.R. § 2.104(h)(3).

15. A requester has thirty calendar days to file an administrative appeal of any EPA denial or partial denial of a FOIA request. 40 C.F.R. § 2.104(j). EPA has twenty working days to make a determination with respect to an administrative appeal. 5 U.S.C. § 552(a)(6)(A)(ii).

16. FOIA provides that a requester like NRDC "shall be deemed to have exhausted [its] administrative remedies" if the agency fails to comply with the applicable time limit for its response to a FOIA request or appeal. *Id.* § 552(a)(6)(C)(i).

17. A reviewing court "may assess against the United States reasonable attorneys' fees and other litigation costs reasonably incurred in any case under [FOIA] in which the complainant has substantially prevailed." *Id.* § 552(a)(4)(E)(i). "[A] complainant has substantially prevailed if the complaint has obtained relief through either-- (I) a judicial order, or

an enforceable written agreement or consent decree; or (II) a voluntary or unilateral change in position by the agency, if the complainant's claim is not insubstantial." *Id.* § 552(a)(4)(E)(ii).

## STATEMENT OF FACTS

### A. The Dickson Landfill's Threats to Human Health and the Environment

18. The Dickson Landfill is located approximately two miles southwest of downtown Dickson, Tennessee. For many years beginning in the late 1960s or early 1970s, the wastes disposed of at the Landfill included weekly trailer loads of drummed TCE and TCE-contaminated liquid wastes, sludges, and slurries from local industrial facilities, as well as contaminated soil from cleanups of other facilities and sites.

19. Areas of the Landfill used to dispose of industrial wastes and other hazardous wastes, including wastes containing TCE, were and remain unlined, and were left exposed to the elements for many years. Waste drums were visible on the surface of the Landfill as recently as 1991. Exposure of this waste to the elements, including rainwater, has contributed to TCE contamination of the soil, groundwater, and bedrock underlying and surrounding the Landfill. Consultants to the government of Dickson County have estimated that leacheate, a liquid solution that forms when water passes through waste material or soil, picking up contaminants, is collecting beneath the Landfill at a rate of five hundred thousand gallons per year.

20. TCE and other toxic chemicals into which TCE degrades have contaminated soil and groundwater several hundred feet beneath the Landfill and wells and springs as far as two to three miles from the Landfill. This contamination has rendered groundwater and surface water unfit for domestic use, and threatens to pollute drinking water sources for thousands of area residents.

21. The government of Dickson County has determined that groundwater contamination from the Landfill presents an "imminent threat" to residents of certain lands north, west, east, and southwest of the Landfill, and has declared those lands an "environmental risk area."

22. The full present extent of the contamination and spread of TCE and its degradation products in the groundwater, surface water, soil, and air at and surrounding the Landfill remain unknown. Many County residents continue to rely on private wells that may be threatened by TCE contamination from the Landfill. The Landfill has also contaminated springs that flow to a river that provides public water supplies for thousands of County residents.

**B.   EPA's Preparation and Publication of the March 2004 *Reassessment Report* on the Dickson Landfill**

23. Since the mid 1980s, EPA, with the assistance of outside contractors, has conducted at least four site assessments of the Dickson County Landfill. The most recent of EPA's assessments began in approximately 2001 and culminated in March 2004 with publication of the *Dickson County Landfill Reassessment Report* (Revision 4) (hereinafter "*Report*").

24. EPA has posted the final *Report*, select appendices to the *Report*, and select references and attachments to an early draft of the *Report* on its website for Region 4, the Region that includes Tennessee. On information and belief, EPA has not posted any drafts of the *Report* itself, nor has it posted a complete set of the appendices, references and attachments to any draft or other version of the *Report*.

**C.   NRDC's November 2007 FOIA Request for Records Relating to the *Report***

25. On November 20, 2007, NRDC submitted a FOIA request to the offices of EPA Region 4 ("NRDC's FOIA request"). The request seeks all records in EPA's possession, custody or control relating to preparation of the *Report*, including, without limitation,

(1) All revisions or other drafts of the *Report* other than Revision 4;

(2) All notes, chronologies, correspondence (including letters, faxes, emails, and telephone records), research, data, and other records gathered for, used to prepare, or considered during the preparation of any revision (including Revision 4) or other draft of the *Report*; and

(3) All records reflecting communications concerning the Report or its preparation or any revision or draft thereof.

26. NRDC's FOIA request expressly defined the term "records" "to mean anything denoted by the use of that word or its singular form" in FOIA, and to include "all writings (handwritten, typed, electronic or otherwise produced, reproduced or stored) including, but not limited to, correspondence, minutes of meetings, memoranda, notes, e-mails, notices, facsimiles, charts, tables, presentations, orders, and filings."

27. NRDC's FOIA request also asked EPA to waive the fees it would otherwise charge to search for and produce responsive records because "disclosure of the information is in the public interest[,] because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest" of NRDC. 5 U.S.C. § 552(a)(4)(A)(iii). EPA granted this fee waiver request in a November 28, 2007 letter to NRDC.

28. On December 18, 2007, EPA contacted NRDC via e-mail to request an extension of time to January 15, 2008 to respond to NRDC's FOIA request. NRDC granted this limited extension in consideration of the winter holidays.

//

//

D. **EPA's Incomplete Response to NRDC's FOIA Request and Unlawful Withholding of Documents Responsive to NRDC's Request**

29. In January 2008, NRDC received an EPA letter, dated January 14, 2008, that purported to respond to, and partially deny, NRDC's FOIA request.

30. With respect to the first subparagraph of NRDC's FOIA request, EPA's letter acknowledged that the agency possesses at least three drafts of the *Report*, identified in the letter as "revisions 1-3." EPA asserted, however, that the drafts were exempt from disclosure "by virtue of Exemption 5 of the FOIA," which concerns "inter-agency or intra-agency memorand[ums] or letters which would not be available by law to a party other than an agency in litigation with the agency," *see* 5 U.S.C. § 552(b)(5), and more specifically "the deliberative process privilege" as "incorporated within Exemption 5." EPA's letter did not describe the nature or the contents of the withheld drafts; did not describe any segregable material within the drafts; and did not provide any factual or other basis for its apparent conclusion that the drafts are wholly exempt from disclosure under the Exemption 5 deliberative process privilege.

31. EPA's letter also referenced and enclosed a three-page printout of an "an index of references and/or attachments to the Report as it appears in the EPA Region 4 Electronic Reading Room" website. EPA characterized the index as a "compilation of documents relied on by the contractor in preparing the Report," and asserted the attachment was thus "responsive" to subparagraphs 2 and 3 of NRDC's FOIA request. The first page of EPA's attached printout indicates that the index corresponds to a January 2002 draft of the *Report*..

32. EPA's January 14, 2008 letter did not identify or describe any additional documents responsive to NRDC's FOIA request.

33. EPA's January 14, 2008 letter did not describe any EPA search efforts with respect to any portion of NRDC's FOIA request.

34.     EPA's January 14, 2008 letter did not include any estimate of the volume of matter responsive to NRDC's FOIA request and withheld from disclosure.

35.     Since January 14, 2008, EPA has not provided NRDC with any further documents responsive to NRDC's FOIA request.

E.  **NRDC's Administrative Appeal and EPA's Failure to Decide that Appeal**

36.     On February 12, 2008, NRDC submitted a timely administrative appeal of its FOIA request and EPA's January 14, 2008 letter purporting to respond to that request ("NRDC's appeal").

37.     NRDC's appeal challenged EPA's withholding of *Report* drafts under the Exemption 5 deliberative process privilege, noting that EPA had failed to explain or support its conclusion that the privilege shields the drafts from disclosure; that EPA has released at least one draft of the *Report* to a Tennessee state agency that has further disclosed it through public file reviews; and that publicly available versions of the *Report* contain substantial factual material of the kind that EPA would be obliged to segregate and disclose from any additional drafts or revisions otherwise exempt from disclosure.

38.     NRDC's appeal also challenged EPA's failure to address fully those portions of NRDC's FOIA request that seek records other than drafts or revisions of the *Report*. NRDC's appeal noted that EPA's January 14, 2008 letter did not identify, let alone disclose, any "notes, chronologies, correspondence . . . research, data and other records" other than the incomplete set of references and appendices included in the three-page index enclosed with the January 14, 2008 letter. The appeal further noted that the index enclosed with EPA's letter concerned references and appendices for a single, early draft of the *Report*, notwithstanding NRDC's

express request for records "gathered for, used to prepare, or considered during the preparation of any revision (including Revision 4) or other draft of the *Report*."

39.   NRDC's appeal also challenged EPA's failure to conduct a search reasonably calculated to identify all documents responsive to NRDC's FOIA request.

40.   EPA has not made a determination with respect to NRDC's appeal.

## CLAIM FOR RELIEF

41.   NRDC realleges and incorporates the allegations of all the preceding paragraphs of this Complaint as if fully set forth herein.

42.   By failing to provide all non-exempt records or portions thereof responsive to NRDC's FOIA request, EPA has violated FOIA's mandate to release agency records to the public. 5 U.S.C. § 552(a)(3), 552(a)(6).

43.   NRDC is entitled to obtain the requested records immediately and at no cost.

44.   NRDC has no adequate remedy at law.

## PRAYER FOR RELIEF

NRDC requests that this Court enter a judgment that:

(1) Declares that EPA has violated FOIA by failing to timely search for, identify, and release all non-exempt records responsive to NRDC's FOIA request;

(2) Orders EPA to promptly release all non-exempt records responsive to NRDC's FOIA request;

(3) Orders EPA to pay NRDC's reasonable attorneys' fees and other costs incurred pursuant to 5 U.S.C. § 552(a)(4)(E), *as amended*; and

(4) Orders such other and further relief as the Court may deem just and proper.

Dated: July 10, 2008
New York, NY

                           Respectfully submitted,

                           */s/ Nancy S. Marks*
                           Nancy S. Marks (NM 3348)
                           Natural Resources Defense Council, Inc.
                           40 West 20th Street
                           New York, NY 10011
                           Phone: (212) 727-2700
                           Fax:   (212) 727-1773

                           Counsel for Plaintiff Natural Resources Defense Council, Inc.